**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

ANISSA ALONZO and
JAMES ALONZO

      Plaintiffs,                           **CASE NO.**

v.

BIOMET, INC., BIOMET ORTHOPEDICS, LLC
BIOMET MANUFACTURING, LLC,
BIOMET US RECONSTRUCTION, LLC, and
ZIMMER BIOMET HOLDINGS, INC.

      Defendants.

_____/

## COMPLAINT

1.    Plaintiffs Anissa Alonzo and James Alonzo, by their attorneys, Schlesinger Law Offices, P.A., complain against Defendants Biomet, Inc., Biomet Orthopedics, LLC, Biomet Manufacturing LLC., Biomet US Reconstruction, LLC, and Zimmer Biomet Holdings, Inc. (collectively "Biomet" or "Defendants") as follows:

### NATURE OF THE CASE

2.    Ms. Alonzo brings this product liability action against Defendants to redress the injuries sustained due to Defendants' defective hip system – the M2a Magnum.  As a result of Ms. Alonso's injuries, Mr. Alonzo has sustained a loss of consortium.  Plaintiffs seek compensatory and punitive damages.

### PARTIES

3.    Plaintiffs, Anissa and James Alonzo, are citizens of the state of Florida and reside in Broward County Florida.  They are married.

4.    Upon information and belief, Defendant Biomet, Inc. is an Indiana corporation, with its principal place of business in Warsaw, Indiana.  Defendant Biomet, Inc. designed,

1

manufactured, marketed, promoted, and sold the M2a Magnum Hip System that is the subject of this lawsuit.

5.      Upon information and belief, Defendant Biomet Orthopedics, LLC is an Indiana limited liability corporation, with its principal place of business in Warsaw, Indiana.  None of this defendant's members are citizens of the State of Florida.  Defendant Biomet Orthopedics, LLC designed, manufactured, marketed, promoted, and sold the M2a Magnum Hip System that is the subject of this lawsuit.

6.      Upon information and belief, Defendant Biomet Manufacturing LLC is an Indiana limited liability corporation with its principal place of business in Warsaw, Indiana.  None of this defendant's members are citizens of the State of Florida.  Defendant Biomet Manufacturing LLC designed, manufactured, marketed, promoted, and sold the M2a Magnum Hip System that is the subject of this lawsuit.

7.      Upon information and belief, Defendant Biomet US Reconstruction, LLC is an Indiana limited liability corporation, with its principal place of business in Warsaw, Indiana.  None of this defendant's members are citizens of the State of Florida.  Biomet US Reconstruction, LLC designed, manufactured, marketed, promoted, and sold the M2a Magnum Hip System that is the subject of this lawsuit.

8.      Upon information and belief, Defendant Zimmer Biomet Holdings, Inc.is an Indiana corporation with its principal place of business in Warsaw, Indiana.  Zimmer Biomet Holdings, Inc. purchased Biomet, Inc. and its subsidiaries in June of 2015.  Zimmer Biomet Holdings, Inc. acquired all liabilities of Biomet, Inc. and its subsidiaries.

9.      Upon information and belief, at all relevant times, Defendants did, and continue to do, business throughout the United States, including within the State of Florida.  Defendants, either directly or through their agents, designed, manufactured, labeled, distributed, and sold the product

at issue in this matter and instructed physicians regarding the advantages of and the proper method of implanting this product.  Hereafter, these defendants are referred to collectively as Biomet or Defendants.

## JURISDICTION AND VENUE

10.     The Court has subject matter jurisdiction under 28 U.S.C. § 1332 because this lawsuit is between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of costs and interest.  Plaintiffs are Florida citizens; Defendants are all incorporated and/or have their principal place of business in Indiana.  And as for the Defendants that are limited liability corporations, none of the members of those LLCs are citizens of the State of Florida.

11.     The Court has personal jurisdiction over each party.  The Plaintiffs reside in Broward County, Florida.  All Defendants marketed, promoted, distributed or sold the sold the M2a Magnum Hip System throughout the United States, including the State of Florida. Defendants have sufficient minimum contacts with this State or sufficiently avail themselves of the markets in this State through their promotion, sales, distribution and marketing within this State to render the exercise of jurisdiction by this Court permissible.

12.     Venue is proper in the Southern District of Florida because Defendants committed tortuous act(s) within the State of Florida out of which act(s) these causes of action arise.  Plaintiffs experienced injury and continue to suffer injuries in Broward County, Florida.  For example, the removal surgery of Ms. Alonzo's M2a Magnum Hip System occurred in Broward, County Florida.

## FACTUAL ALLEGATIONS

**A.      The M2a Magnum Hip System Is Defective And Was Not Adequately Tested**

13.     The hip joint is where the femur connects to the pelvis.  The joint is made up of the femoral head (a ball-like structure at the very top of the femur) rotating within the acetabulum (a cup-like structure at the bottom of the pelvis).  In a healthy hip, both the femur and the acetabulum

3

are strong, and the rotation of the bones against each other is cushioned and lubricated by cartilage and fluids.

14.     A total hip replacement replaces the body's natural joint with an artificial one, usually made out of metal and plastic.  A typical hip replacement system consists of four separate components: (1) a femoral stem; (2) a femoral head; (3) a plastic (polyethylene) linear; and (4) an acetabular shell.  After the surgeon hollows out a patient's femur bone, the femoral stem is implanted.  The femoral head is a metal ball that is fixed on top of the femoral stem.  The femoral head forms the hip joint when it is placed inside the polyethylene linear and acetabular shell.

15.     While most hip replacements use a polyethylene plastic acetabular liner, Biomet's M2a Magnum Hip System has a critical difference: it is a monoblock system which does not have an acetabular liner.  Instead, the M2a Magnum Hip System forces metal to rub against metal with the full weight and pressure of the human body.  Because of Biomet's defective design for the M2a Magnum Hip System, hundreds of patients – including Plaintiff – have been forced to undergo surgeries to replace the failed hip implants.

16.     The M2a Magnum Hip System suffers from a design or manufacturing defect that causes excessive amounts of cobalt and chromium to wear and corrode from the surface of the acetabular cup, from the femoral head, and from the taper adapter.  These cobalt and chromium fragments prompt the body to react by rejecting the hip implant.  This rejection often manifests with symptoms of pain, looseness, dislocation, and squeaking and popping sounds.  Inside the hip joint, the metal reaction often causes fluids to accumulate and soft tissues and bone to die.  Additionally, reports were received that M2a Magnum Hip System generated metal debris from wear, which can spread throughout the bone and tissue and cause severe inflammation and damage.

17.     Biomet failed to sufficiently test the design of the M2a Magnum Hip System, and the M2a Magnum Hip System was never approved by the FDA as being safe or effective for the

products' intended purpose.  Further, the M2a Magnum Hip System was not subject to the rigorous pre-market approval (PMA) testing and approval pursuant to 21 U.S.C. § 360(e).  Instead, Defendants received FDA clearance to market the M2a Magnum Hip System in the United States through the 510(k) pre-market notification process pursuant to 21 U.S.C. § 360(k), asserting that it was substantially equivalent to other metal-on-metal hip replacement systems already on the market.  This approval process is generally reserved for Class II devices.  Accordingly, the M2a Magnum Hip System is not subject to federal preemption.

18.    At the time the M2a Magnum Hip System was designed, tested, manufactured, marketed and introduced into the stream of commerce, safer more effective alternative designs of hip replacements existed and were available to patients.

19.    On numerous occasions, Biomet met with orthopedic surgeons throughout the United States, and other cities, including, upon information and belief, with Plaintiff's orthopedic surgeon, to promote the M2a Magnum Hip System.  At some or all of these meetings, a representative or representatives of Biomet were present.  During these meetings, Biomet assured the orthopedic surgeons that the M2a Magnum Hip System was safe, was the best product on the market, had an excellent track record, and a low acceptable failure rate.  Biomet continued to "defend" the M2a Magnum Hip System even after they became aware of numerous and serious complications with the M2a Magnum Hip System. Biomet did not reveal (and instead concealed) their knowledge of numerous complications and other "bad data" during their meetings with orthopedic surgeons.

### B.    Biomet Sold The M2a Magnum Hip Implant To Plaintiff After Biomet Knew It Was Defective, That It Had Injured Others, And That It Would Injure Plaintiff

20.    Shortly after launching the M2a Magnum Hip System, reports of failures began flooding into Biomet.  For example, in or about August 2004, Biomet received a complaint that a

patient required and underwent surgery to remove and replace the M2a Magnum Hip System because it had become loose after only 3 years.  Biomet closed its investigation of this complaint.

21.     Biomet received hundreds of similar complaints reporting that M2a Magnum Hip System failed, that that failure forced patients to undergo painful and risky surgeries to remove and replace the failed hip component.  To date, more than 350 reports of adverse events associate with the M2a Magnum Hip System have been filed with the FDA.

22.     By the time Biomet sold the M2a Magnum Hip System to Plaintiff, numerous reports had been filed with the FDA reporting an adverse event associate with the M2a Magnum Hip System.  Thus, Biomet was fully aware that the M2a Magnum Hip System was defective and that patients had been injured by that defect.  Based on this information, Biomet should have recalled the M2a Magnum Hip System before it was sold to Plaintiff.  Indeed, Biomet should have stopped selling the defective implant when Biomet became aware that the M2a Magnum Hip System had failed in several patients.

23.     Despite knowing that the M2a Magnum Hip System had a defect, and that it failed hundreds of times, causing hundreds of patients to undergo complicated, expensive, and painful revision surgeries with a prolonged recovery time, Biomet continued to sell the defective M2a Magnum Hip System.  Biomet actively concealed the known defects from doctors and patients – including Plaintiff and Plaintiff's doctor.

24.     Ignoring the numerous reported M2a Magnum Hip System failures, Biomet continued to promote, market, and defend the defective M2a Magnum Hip System.  For example, Biomet published marketing brochures touting the safety and durability of metal-on-metal implants and specifically, the M2a Magnum Hip System.  Biomet gave these brochures to doctors around the world to encourage them to use the M2a Magnum Hip System.

25.     Despite its knowledge that the M2a Magnum Hip System was defective, Biomet also made several false representations about specific design elements of the M2a Magnum Hip System that it claimed made the M2a Magnum Hip System superior to other more safe hip implants on the market.  Biomet claimed:

(a)     "The M2a-Magnum$^{TM}$ Large Metal Articulation System offers optimal joint mechanic restoration and ultra low-wear rates in vivo," and

(b)     "Many studies conducted over the last several decades have shown no definitive correlation of negative health issues to ion levels exhibited from metal-on-metal implants;"

(c)     "[S]et the standard for performance and design in hip systems;"

(d)     "[A]n ultra-high performance metal-on-metal articulation;"

(e)     "[D]esigned specifically to address the issue of wear debris;"

(f)     "[T]he right choice for use in young, highly active patients."

Additionally, Biomet promoted the M2a Magnum Hip System as "offering improved range of motion and joint stability" and employed gymnast, Mary Lou Retton to deliver the message in April 2006 for direct-to-consumer print, TV and radio advertising.

26.     Biomet's reason for concealing the defect in the M2a Magnum Hip System is clear. Hip implant sales are critically important to Biomet, and the M2a Magnum Hip System is one of Biomet's most profitable products.  During the time period relevant to this Complaint, Biomet's management was trying to make Biomet appealing to investors, and in 2007, Biomet was purchased by a private equity firm for $10 billion.

27.     Biomet chose corporate profits over patient safety.  Rather than admit its M2a Magnum Hip System is defective, Biomet continued to promote, market, and sell the M2a Magnum Hip System.  At present, Biomet continues to sell the defective M2a Magnum Hip System to unsuspecting patients without any warning about the risks or the failures reported to Biomet.

7

C.    **Plaintiff's Magnum Hip System Was Defective And Failed, Forcing Plaintiff To Undergo An Additional Painful and Risky Surgery**

28.    In January of 2005, Plaintiff underwent a surgical procedure to implant the M2a Magnum Hip System in one of her hips.  Dr. Richard Katz performed the surgery in Albany, New York.

29.    By this time, numerous reports of adverse events associated with M2a Magnum Hip System had been filed with the FDA, and Biomet knew the M2a Magnum Hip System was defective.  Nevertheless, Biomet refused to disclose that information to Plaintiff, her physicians, or the public.  Instead, Biomet misrepresented to Plaintiff and her orthopedic surgeon that the M2a Magnum Hip System was safe and effective.  Relying on Biomet's representations, Plaintiff's orthopedic surgeon decided to use the M2a Magnum Hip System.  But for Biomet's misrepresentations, Dr. Katz would not have used the M2a Magnum Hip System for Plaintiff's hip replacement surgery.

30.    As a result of the defective design, manufacture and composition of the M2a Magnum Hip System, and its accompanying warnings and instructions (or lack thereof), Plaintiff's hip implant failed, causing her pain and suffering.

31.    Plaintiff also suffered from metal ion disease and other effects as a result of the metal toxicity in her body. Plaintiff had marked elevation of her chromium and cobalt levels. Plaintiff's chromium levels were at 80.6 micrograms per liter – the normal level is less than 1.4 micrograms per liter.  Plaintiff's cobalt levels were at 60.6 micrograms per liter – the normal level is less than 1.8 micrograms per liter.

32.    Plaintiff underwent revision surgery on or about April 16, 2021 to remove the failed M2a Magnum Hip System from Plaintiff's body.  Revision surgeries are generally more complex than the original hip replacement surgery, often because there is a reduced amount of bone in which

8

to place the new hip implants.  Revision surgeries also usually take longer than the hip replacement surgery and the revision surgery has a higher rate of complications.

33.     Plaintiff's revision surgery was performed by Dr. Steven Naide in Broward County, Florida.

34.     Having to go through a revision surgery, has subjected Plaintiff to greater risks of future complications than she had before the revision surgery.  Studies found that a revision surgery causes a much higher risk of dislocation compared with an original hip replacement surgery.  A study by Charlotte Philips and her colleagues at Brigham and Women's Hospital in Boston showed that 14.4 percent of patients who had revision surgery suffered from a dislocation compared with 3.9 percent of patients who had an original hip replacement surgery.  In other words, hip replacement patients who had a revision surgery are almost four times more likely to suffer from a hip dislocation than those who have not.  (Phillips CB, et al.  Incidence rates of dislocation, pulmonary embolism, and deep infection during the first six months after elective total hip replacement.  American Journal of Bone and Joint Surgery 2003; 85:20-26).

35.     As a direct and proximate result of the failure of her M2a Magnum Hip System and Biomet's wrongful conduct, Plaintiff sustained and continues to suffer economic damages (including medical and hospital expenses), severe and possibly permanent injuries, pain, suffering and emotional distress.  As a result, Plaintiff has sustained and will continue to sustain damages in an amount to be proven at trial, but which will far exceed the $75,000.00 jurisdictional minimum of this Court.

## FIRST CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT
## AGAINST ALL DEFENDANTS

36.     Plaintiffs incorporate paragraphs 1-35 of this Complaint as if fully set forth here and further allege as follows:

37.    Defendants are the manufacturers, designers, distributors, sellers, and/or suppliers of the M2a Magnum Hip System that was surgically implanted in Plaintiff.

38.    The M2a Magnum Hip System manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants was defective in its manufacture and construction when it left Defendants' hands because it deviated from product specifications and/or applicable federal requirements for these medical devices, posing a serious risk of injury and death.

39.    As a direct and proximate result of Plaintiff's use of Defendants' M2a Magnum Hip System as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff, Ms. Alonzo, has suffered damages for pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, aggravation of a disease or physical defect and loss of capacity for the enjoyment of life in the past and to be sustained in the future; as well as damages for lost earnings in the past, loss of earning capacity in the future, medical expenses incurred in the past and medical expenses to be incurred in the future. The injuries and losses of Plaintiff are permanent in nature and Plaintiffs will continue to suffer such losses.

40.    Defendants' conduct as described above, was extreme and outrageous.  Defendants risked the lives of recipients of their products, including Plaintiff's, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.  Defendants knew or should have known of the serious health risks it created. Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting recipients of Defendants' M2a Magnum Hip System.  Defendants' outrageous conduct warrants an award of punitive damages.

41.    Plaintiffs seek actual and punitive damages from Defendants as alleged herein.

10

42.     WHEREFORE, Plaintiffs demands judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY – DESIGN DEFECT
## AGAINST ALL DEFENDANTS

43.     Plaintiffs incorporate paragraphs 1-35 of this Complaint as if fully set forth here and further allege as follows:

44.     Defendants are the manufacturers, designers, distributors, sellers, and/or suppliers of the M2a Magnum Hip System that was surgically implanted in Plaintiff.

45.     The M2a Magnum Hip System was in an unsafe, defective and inherently dangerous condition for users such as Plaintiff.

46.     The M2a Magnum Hip System was in an unsafe, defective and inherently dangerous condition at the time it left Defendants' possession.

47.     At all times relevant, the M2a Magnum Hip System was expected to and did reach the usual consumers, handlers, and persons coming into contact with the M2a Magnum Hip System without substantial change in the condition in which it was designed, produced, manufactured, sold, distributed and marketed by Defendants.

48.     The M2a Magnum Hip System's unsafe, defective, and inherently dangerous condition injured Plaintiff.

49.     The M2a Magnum Hip System failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

50.     Plaintiff's injuries resulted from use of the M2a Magnum Hip System that was both intended and reasonably foreseeable by Defendants.

51.     At all times relevant, the M2a Magnum Hip System posed a foreseeable risk of danger inherent in the design, which greatly outweighed the benefits of that design.

52.     At all time relevant, the M2a Magnum Hip System was defective and unsafe, and Defendants knew or had reason to know that said product was defective and unsafe, especially when used in the form and manner as provided by Defendants.

53.     At all times relevant, Defendants knew, or should have known, that the M2a Magnum Hip System was in a defective condition and was and is inherently dangerous and unsafe.

54.     When implanted into Plaintiff, the M2a Magnum Hip System was used for the purpose and in a manner normally intended, namely for use as a hip replacement device.

55.     Defendants, with this knowledge, voluntarily designed their M2a Magnum Hip System in a dangerous condition for use by the public and, in particular, Plaintiff.

56.     At all times relevant, the M2a Magnum Hip System lacked utility for any group of users, including Plaintiff.

57.     The M2a Magnum Hip System provided no net benefit to any class of patients, including Plaintiff.

58.     Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

59.     Defendants failed to complete adequate pre-market testing and post-market surveillance on the M2a Magnum Hip System.

60.     Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed a defective product which, when used in its intended or reasonably foreseeable manner, created an unreasonable risk to the health of consumers and to Plaintiff in particular, and Defendants are therefore strictly liable for the injuries sustained by Plaintiff.

61.     Defendants are strictly liable for Plaintiff's injuries in the following ways:

(a)     the M2a Magnum Hip System as designed, manufactured, sold and supplied by Defendants, was defectively designed and placed into the stream of commerce by Defendants in a defective and unreasonably dangerous condition;

(b)     Defendants failed to properly market, design, manufacture, distribute, supply and sell the M2a Magnum Hip System;

(c)     Defendants failed to adequately test the M2a Magnum Hip System; and

(d)     A feasible alternative design existed that was capable of preventing Plaintiff's injuries.

62.     As a direct and proximate result of Defendants' placement of the defective M2a Magnum Hip System into the stream of commerce, Plaintiff, Ms. Alonzo, has suffered damages for pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, aggravation of a disease or physical defect and loss of capacity for the enjoyment of life in the past and to be sustained in the future; as well as damages for lost earnings in the past, loss of earning capacity in the future, medical expenses incurred in the past and medical expenses to be incurred in the future. The injuries and losses of Plaintiff are permanent in nature and Plaintiffs will continue to suffer such losses..

63.     Defendants' conduct as described above, was extreme and outrageous.  Defendants risked the lives of recipients of their products, including Plaintiff's, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.  Defendants knew or should have known of the serious health risks it created.  Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting recipients of Defendants' M2a Magnum Hip System.  Defendants' outrageous conduct warrants an award of punitive damages.

64.     Plaintiffs seek actual and punitive damages from Defendants as alleged herein.

13

65.     WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems just and proper.

**THIRD CAUSE OF ACTION**
**STRICT PRODUCTS LIABILITY – FAILURE TO WARN**
**AGAINST ALL DEFENDANTS**

66.     Plaintiffs incorporate paragraphs 1-35 of this Complaint as if fully set forth here and further allege as follows:

67.     The M2a Magnum Hip System was defective and unreasonably dangerous when it left the possession of Defendants in that it contained warnings insufficient to alert Plaintiff's implanting physician of the dangerous risks and reactions associated with the M2a Magnum Hip System including but not limited to the risks of developing serious and dangerous side effects, including but not limited to component loosening, component mal-alignment, infections, fracture of the bone, dislocation, metal sensitivity and toxicity, pain, irritation and discomfort, as well as the need for additional procedures to remove and replace the M2a Magnum Hip System, as well as other severe and permanent health consequences, notwithstanding Defendants' knowledge of an increased risk of these injuries and side effects over other hip arthroplasty devices.

68.     At the time Plaintiff's physician received and/or used the M2a Magnum Hip System, the M2a Magnum Hip System was being used for the purposes and in a manner normally intended, namely for hip arthroplasty.

69.     Plaintiff's implanting physician could not, by the exercising reasonable care, have discovered the defects herein mentioned and perceived their danger.

70.     Defendants, as manufacturers and/or distributors of the M2a Magnum Hip System, are held to the level of knowledge of an expert in the field.

71.     Defendants' warnings were not accurate or clear, and/or were ambiguous.

72.     Plaintiff's implanting physician reasonably relied upon Defendants' skill, superior knowledge and judgment.  Moreover, Plaintiff's implanting physician was not aware of true risks of implanting the M2a Magnum Hip System.

73.     Defendants had a continuing duty to warn Plaintiff's implanting physician of the dangers associated with the M2a Magnum Hip System.

74.     Had Plaintiff's implanting physician received adequate warnings regarding the risks of the M2a Magnum Hip System, he would not have used it.

75.     As a direct and proximate result of Plaintiff's use of the M2a Magnum Hip System, Plaintiff, Ms. Alonzo, has suffered damages for pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, aggravation of a disease or physical defect and loss of capacity for the enjoyment of life in the past and to be sustained in the future; as well as damages for lost earnings in the past, loss of earning capacity in the future, medical expenses incurred in the past and medical expenses to be incurred in the future. The injuries and losses of Plaintiff are permanent in nature and Plaintiffs will continue to suffer such losses.

76.     Defendants' conduct as described above, was extreme and outrageous.  Defendants risked the lives of recipients of their products, including Plaintiff's, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.  Defendants knew or should have known of the serious health risks it created.  Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting recipients of Defendants' M2a Magnum Hip System.  Defendants' outrageous conduct warrants an award of punitive damages.

77.     Plaintiffs seek actual and punitive damages from Defendants as alleged herein.

78.     WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems just and proper.

## FOURTH CAUSE OF ACTION
## NEGLIGENCE
## AGAINST ALL DEFENDANTS

79.   Plaintiffs incorporates paragraphs 1-35 of this Complaint as if fully set forth here and further allege as follows:

80.   Defendants had a duty to exercise reasonable care in designing, researching, manufacturing, marketing, supplying, promoting, sale, testing, quality assurance, quality control, and/or distribution of the M2a Magnum Hip System into the stream of commerce, including a duty to assure that the device would not cause those who had it surgically implanted to suffer adverse harmful effects from it.

81.   Defendants failed to exercise reasonable care in designing, researching, manufacturing, marketing, supplying promoting, sale, testing, quality assurance, quality control, and/or distribution of the M2a Magnum Hip System into interstate commerce in that Defendants knew or should have known that the M2a Magnum Hip System caused significant bodily harm, including but not limited to, partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for a revision surgery to replace the device with the increased risks of complications and death from such further surgery. Defendants knew or should have known the M2a Magnum Hip System was unsafe and/or failed to comply with federal requirements.

82.   Despite the fact that Defendants knew or should have known that the M2a Magnum Hip System posed a serious risk of bodily harm to consumers, Defendants continued to manufacture and market the M2a Magnum Hip System for use by consumers like Plaintiff.

83.    Defendants knew or should have known that consumers such as Plaintiff would suffer foreseeable injury, and/or be at increased risk of suffering injury as a result of Defendants' failure to exercise ordinary care as described above.

84.    As a direct and proximate result of Defendants' negligence, Plaintiff, Ms. Alonzo, has suffered damages for pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, aggravation of a disease or physical defect and loss of capacity for the enjoyment of life in the past and to be sustained in the future; as well as damages for lost earnings in the past, loss of earning capacity in the future, medical expenses incurred in the past and medical expenses to be incurred in the future. The injuries and losses of Plaintiff are permanent in nature and Plaintiffs will continue to suffer such losses.

85.    Defendants' conduct as described above, was extreme and outrageous.  Defendants risked the lives of recipients of their products, including Plaintiff's, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.  Defendants knew or should have known of the serious health risks it created. Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting recipients of Defendants' M2a Magnum Hip System.  Defendants' outrageous conduct warrants an award of punitive damages.

86.    Plaintiffs seek actual and punitive damages from Defendants as alleged herein.

87.    WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems just and proper.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR**
**TRADE PRACTICES ACT**
**AGAINST ALL DEFENDANTS**

88.     Plaintiffs incorporate paragraphs 1-35 of this Complaint as if fully set forth here and further allege as follows:

89.     At all times relevant to this action, Plaintiff was a consumer as described in the Florida Deceptive and Unfair Trade Practices Act, Florida Statute Section 501.203(7).

90.     In violation of the Florida Deceptive and Unfair Trade Practices Act, Defendants advertised and promoted the M2a Magnum Hip System using representations it knew to be false, misleading, or deceptive.

91.     This false, misleading, or deceptive advertising and promotion constitutes "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices" pursuant to Florida Statutes Section 501.204.

92.     Based upon the false, misleading, or deceptive advertising and promotion of Defendants, Plaintiff purchased the M2a Magnum Hip System.

93.     As a result of the M2a Magnum Hip System purchased by Plaintiff being other than as represented by Defendants, it was thus unfit for its intended purpose and therefore valueless.

94.     As a direct and proximate result of the deceptive and unfair trade practices of Defendants, Defendants sold and Plaintiff purchased a valueless hip replacement system.

95.     These violations of the Florida Deceptive and Unfair Trade Practices Act were a producing cause of Plaintiff's damages as alleged in this Complaint.

96.     WHEREFORE, Plaintiffs demand judgment against the Defendants for the loss Plaintiffs incurred together with reasonable attorneys' fees and costs of suit pursuant to Florida Statutes, Section 501.211(2), and for any further relief that the court deems just and proper.

### SIXTH CAUSE OF ACTION
### LOSS OF CONSORTIUM OF JAMES ALONZO
### AGAINST ALL DEFENDANTS

18

97.     Plaintiffs incorporate paragraphs 1-35 of this Complaint as if fully set forth here and further allege as follows:

98.     At all times relevant, Plaintiff James Alonzo was and is the husband of Plaintiff Anissa Alonzo.  As such, Plaintiff James Alonzo was and is entitled to his wife's services, support, companionship, affection and consortium.

99.     As a result of the injuries sustained by his wife as alleged in this Complaint, Plaintiff James Alonzo has lost the services, support, companionship, affection and consortium of his wife, and will continue to lose said services, support, companionship, affection and consortium in the future.

100.    Plaintiffs seek actual and punitive damages from Defendants as alleged herein.

101.    WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

102.    Plaintiffs hereby demand a trial by jury on all counts as to all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendants on each of the above-referenced Claims and Causes of Action as follows:

1.      Awarding compensatory damages to Plaintiff, Ms. Alonzo in an amount to be determined at trial;

2.      Awarding compensatory damages to Plaintiff, Mr. Alonzo in an amount to be determined at trial;

3.      Awarding punitive and/or exemplary damages, in an amount to be determined at trial;

19

4.      Awarding Plaintiffs' attorneys' fees;

5.      Awarding Plaintiffs the costs of the proceedings; and

6.      Awarding such other and further relief this Court deems just and proper.

Dated: October 27, 2021

s/Jeffrey L. Haberman
Jeffrey L. Haberman
Sarah J. Schultz
**SCHLESINGER LAW OFFICES, P.A.**
1212 Southeast Third Avenue
Ft. Lauderdale, FL 33316
(954) 320-9507
(954) 320-9509 (fax)
jhaberman@schlesingerlaw.com
sarah@schlesingerlaw.com
Attorneys for Plaintiffs